IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROY HUNT,

    Plaintiff,

v.                                   Civil Action No. 3:21cv539

P. McCABE, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Roy Hunt, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Hunt's Second Particularized Complaint. (ECF No. 18.) The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons set forth below, Hunt's claim against Armor Correctional Health Care ("Armor") will be DISMISSED.

### I. Procedural History

By Memorandum Order entered on December 14, 2021, the Court directed Hunt to file a particularized complaint. (ECF No. 14.)[2] On January 13, 2022, Hunt filed his First

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and capitalization in the quotations from the parties' submissions.

Particularized Complaint. (ECF No. 15.) In submitting the First Particularized Complaint, Hunt ignored a number of instructions the Court provided with respect to filing a particularized complaint. Accordingly, by Memorandum Order entered on February 24, 2022, the Court again directed Hunt to file an appropriate particularized complaint. (ECF No. 17.) On March 23, 2022, Hunt submitted his Second Particularized Complaint. (ECF No. 18.) By Memorandum Opinion and Order entered on January 23, 2023, the Court dismissed a number of Hunt's claims as improperly joined. (ECF Nos. 57, 58.)[3] Thereafter, by Memorandum Opinion and Order entered on January 17, 2024, the Court dismissed Hunt's claims against Nurse Procice without prejudice because Hunt failed to timely serve her. (ECF Nos. 96, 97.)

The following claims remain before the Court:

Claim One   In violation of Hunt's Eighth Amendment[4] right to adequate medical care:

> (a) Medical Secretary Harlon and Nurse McCabe failed to provide Captain Bowls with accurate information about Hunt's boot profile which prevented Hunt from seeing an endocrinologist for his thyroid. (ECF No. 18 ¶¶ 26, 27(a).)[5]
>
> (b) Additionally, "Nurse McCabe never set a new appointment for plaintiff to go to Virginia Commonwealth University Hospital so could he start treatment on his thyroid." (ECF No. 18 ¶ 27(a).)

---

[3] Armor has filed a Motion to Dismiss. (ECF No. 65.) However, the Motion to Dismiss filed by Armor fails to address the relevant jurisprudence for stating a claim against a corporation in a 42 U.S.C. § 1983 action.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] Hunt spelled this Defendant's name as Halom, but the correct spelling is Harlon. (ECF No. 68, at 1 n.1.) The Court employs Harlon to refer to this Defendant.

Hunt includes two paragraphs numbered 27 in his Second Particularized Complaint. The second paragraph number 27 comes after paragraph number 28. The Court refers to the first paragraph 27 as ¶ 27(a) and the second paragraph as ¶ 27(b).

      (c) Nurse McCabe failed to ensure that Hunt received his thyroid medication. (ECF No. 18 ¶ 27(a).)

Claim Two  Medical Secretary Harlon denied Hunt adequate medical care by repeatedly refusing to place Hunt on the master pass list to see nurses or doctors. (ECF No. 18 ¶ 26.) "Nurse McCabe refused [to put Hunt] on the sick call list to see the doctor numerous times that caused" Hunt's thyroid condition to get worse. (ECF No. 18 ¶ 27(a).)

Claim Seven Armor Health Care ("Armor") has history and practice of providing inadequate medical care in violation of the Eighth Amendment. (ECF No. 18 ¶ 32.)

The Court only recites below the allegations pertaining to these remaining claims. The Court focuses on the sparse allegations pertaining to Armor.

## II. Summary of Relevant Allegations

Hunt's primary complaint concerns the denial of appropriate care for his thyroid disease in violation of the Eighth Amendment. As relevant here, Hunt begins his Second Particularized Complaint by alleging that, on October 3, 2019, he was scheduled to go to an endocrinology specialist at Virginia Commonwealth University ("VCU") Hospital to start radiation treatment on his thyroid. (ECF No. 18 ¶ 6.) Hunt was wearing boots, instead of the step-in shoes the Virginia Department of Corrections requires inmates to wear to outside appointments. (ECF No. 18 ¶ 6.) Hunt had a medical order, known as a boot profile, that provided for him to wear boots to outside appointments. (ECF No. 18 ¶ 6.) Captain Bowls[6] contacted the medical department and was informed by Medical Secretary Harlon and Nurse McCabe "that they did not see a boot profile in plaintiff's medical records." (ECF No. 18 ¶ 6.) Because Hunt could not wear the step-in shoes and Hunt refused to remove his boots for the appointment, he was not permitted to go to

---

[6] Captain Bowls is a correctional officer employed by the Virginia Department of Corrections. He is not a defendant in this matter.

3

the appointment. (ECF No. 18 ¶¶ 6–9.) Nurse McCabe then gave "false information that plaintiff refused his visit to the hospital." (ECF No. 18 ¶ 9.)

Subsequent to October 3, 2019, Hunt alleges, *inter alia*, that he was not provided with his thyroid medication on a regular basis, not rescheduled to go to the VCU hospital, and became sicker. (ECF No. 18 ¶¶ 9–12.) Additionally, Hunt alleges that Nurse McCabe and Secretary Harlon refused to place Hunt on the sick call list to see the doctor. (ECF No. 18 ¶ 26; ¶ 27(a).) With respect to Armor, Hunt contends that:

> Armor Healthcare provider is the agency which Virginia Department of Corrections medical staff work under. It is Armor Healthcare providers duty to ensure their employees provide adequate medical attention as one seek[s] from the hospital. Armor Healthcare Provider is a medical contractor who makes money off the treatment of inmates medical care. Armor Healthcare provider has a history of not adequate training or teaching their employees to give inmates adequate care. See Exhibit #41, the plaintiff's chronic medication that he has to take for rest of his life expired. See the inadequate treatment that plaintiff endured for years through the hands of the medical staff. See paragraphs #1, #2, #3, #5, #6, #7, #8, #9, #10, and #11. Plaintiff endured physical suffering . . . for years from his thyroid. Due to his medication expiring, not being able to see the doctor because was not added to the master pass list. See Exhibits #12, #13, #14, #15, #16-A. Because [of] the [i]nadequate medical care plaintiff received from the employees of Armor Healthcare Provider, plaintiff was diagnosed with two new diseases. See Exhibit #29 A–G. Armor Healthcare provider did not personally treat plaintiff. However, Armor Healthcare Provider is held just as liable due to not properly training and overseeing their employees when treating and referring of Plaintiff. Due to the inadequate training and supervision of Armor Healthcare provider their actions violated Plaintiff's 8th Amendment Right with deliberate indifference to Plaintiff's medical needs. . . . Armor Healthcare provider is as much liable as the doctors and nurses who personally violated Plaintiff's Eighth Amendment Right, who are their employees.

(ECF No. 18 ¶ 32 (case citations omitted).)

### III. ANALYSIS

A private corporation, such as Armor, cannot be held liable "for torts committed by [its employees] when such liability is predicated solely upon a theory of respondeat superior." *Austin*

*v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted).[7] Instead, "a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v.* Doyle, 326 F.3d 463, 371 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). A plaintiff must, "identify the offending [official] policy [or custom] with precision." *Carter*, 164 F.3d at 218. Here, Hunt fails to identify any official policy or custom of Armor that he maintains led to the alleged deprivation of his rights. Rather, in his Second Particularized Complaint, Hunt attempts to establish Armor's liability under the third avenue, failure to train.

A corporation's failure to train may support § 1983 liability where the failure "amounts to deliberate indifference to the rights of persons with whom the [employee] come into contact," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), and is the "moving force [behind] the constitutional violation." *Id.* at 389 (internal quotations omitted) (citation omitted). This corporate liability theory thus has two components in addition to an underlying constitutional violation: deliberate indifference and causation. To amount to "deliberate indifference," a failure to train must reflect the corporation's "deliberate" or "conscious" choice. *Id.* at 379. A "deliberate" choice requires that the corporation have "fair *notice* that subordinates are engaged

---

[7] Principles of § 1983 municipal liability apply equally to a private corporation that is deemed to acting under color of state law. *See Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003) (citation omitted)

5

in constitutional or statutory deprivations," and regardless, "consciously chose[ ] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (citation omitted). Plaintiffs may establish deliberate indifference in two ways. First, they may show that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (quoting *Gallimore v. Henrico Cnty. Sch. Bd*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014)). Second, they may demonstrate that the corporation has failed to train its employees on "an obvious constitutional duty that particular employees are certain to face." *Id.* at 538 (quoting *Gallimore*, 38 F. Supp. 3d at 726). This second method is limited, however, to a "narrow scope" of constitutional duties. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011).

A plaintiff must also demonstrate a "causal nexus" between the deficient training and the alleged constitutional violation. *Brown*, 308 F. Supp. 2d at 694. Generally, a plaintiff cannot demonstrate a causal connection "by proof of a single incident of unconstitutional activity alone." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) (citations omitted). Rather, a plaintiff must show that the "deficiency in training actually caused" the violation. *Canton*, 489 U.S. 378, 391. However, in limited cases, a single incident can constitute support for a causal connection where the constitutional duty is so obvious that without proper training, "the specific violation [was] 'almost bound to happen, sooner or later.'" *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (quoting *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

Hunt fails to set forth facts that indicate Armor had "fair *notice* that subordinates [were] engaged in constitutional or statutory deprivations," and nonetheless "consciously chose[ ] a particular course of action in response." *Brown*, 308 F. Supp. 2d at 703 (citation omitted).

6

Further, Hunt fails to even identify what specific aspect of Armor's training was deficient. *See Burnley v. Norwood*, No. 3:10CV264-HEH, 2010 WL 3063779, at *6 (E.D. Va. Aug. 4, 2010) (dismissing failure to train claim where the complaint did not plead and facts relating the training or supervision programs). Here, Hunt merely alleges in a conclusory fashion that Armor failed to train its employees. Accordingly, Claim 7, against Armor, will be DISMISSED WITHOUT PREJUDICE. Armor's Motion to Dismiss (ECF No. 65) will be DENIED AS MOOT.

An appropriate Order will accompany this Memorandum Opinion.

Date: 1/23/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge